# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CLAUDE BUCKNALL and SHAUN
COOPER, individually and on behalf of
all others similarly situated,

     Plaintiffs,

v.                                Case No:  8:26-cv-1705

STEPP'S TOWING SERVICE INC. and
TODD EMORY STEPP,

     Defendants.

_____.

## FLSA SECTION 216(b) COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, CLAUDE BUCKNALL and SHAUN COOPER, individually, and on behalf of all others similarly situated who consent to their inclusion in this collective action, bring this lawsuit pursuant to §216(b) of the Fair Labor Standards Act ("FLSA"), against Defendants STEPP'S TOWING SERVICE INC. and TODD EMORY STEPP, for violations of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* for failure to pay overtime compensation (premium pay) to all Tow Truck Drivers (hereinafter "Drivers"), throughout the preceding 3 years of the filing of this complaint to the date of trial.

## INTRODUCTION

1.    The Fair Labor Standards Act is our nation's foremost wage law. The overtime requirements of the FLSA were designed to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers..." 29 U.S.C. § 202(a). To achieve its goals, the FLSA sets minimum wage and overtime pay requirements for covered employers. 29 U.S.C. §§ 206(a) and 207(a). It requires minimum wage and overtime pay for certain non-exempt employees. 29 U.S.C. §213.

2.    As explained herein, an employer violates the FLSA when it does not pay overtime compensation to any employee who is non-exempt.

3.    Employees are either exempt or non-exempt, and the key to determining exempt status does not depend on an employer's general characterization of the job; what is important is what an employee actually does on a day-to-day basis. Ale v. Tennessee Valley Authority, 269 F.3d 688, 691 (6th Cir. 2001).

4.    It is well settled that employees are presumed to be non-exempt; that is, that they are entitled to overtime at the rate of time and one half their regular hourly rate for hours worked after 40 each week. Ale v. Tennessee Valley Authority, 269 F.3d 680, 683 (6th Cir. 2001).

5. There is no exemption found in the FLSA applicable in this case, but to the extent one is asserted by the Defendants, it "must establish [it through clear and affirmative evidence that the employee meets every requirement of an exemption." Ale v. Tennessee Valley Authority, 269 F.3d 680, 683 (6th Cir. 2001).

6. Claude Bucknall ("Bucknall" or "Plaintiff") worked for Defendants during the period of March until November 2024 as a "wrecker" driver, also known as a tow truck driver.

7. Plaintiff Shaun Cooper ("Cooper" or "Plaintiff") worked for Defendants during the period of 2021 until May 2025 as a "wrecker" driver, also known as a tow truck driver.

8. Defendants have maintained a scheme to avoid its obligations to pay full, accurate and legally required overtime wages to its non-exempt employees to save millions of dollars in labor costs and maximize profits all to the detriment of its employees.

9. Defendants have willfully and with reckless disregard for the FLSA classified all tow truck drivers as a class and whole, (aka "wrecker drivers" (hereinafter "drivers") as exempt from overtime pay.

10. Plaintiffs, like their fellow driver employees, and who are members of this collective group (aka "Class"), worked out of and reported to more than several

of Defendants' locations (aka "yards"), throughout Florida and ultimately reported to the corporate office located at 9602 E. U.S. HWY. 92, TAMPA, FL 33610.

11.     Plaintiffs, like their fellow drivers employed within the past three (3) years preceding the filing of this Complaint, and still to this day, were systematically denied the payment of the lawfully required overtime premium pay for hours they worked in excess of forty (40) on behalf of Defendants.

12.     Defendants have maintained this unlawful pay practice applicable to all drivers over the preceding 3 years to the present day.

13.     Accordingly, Plaintiffs individually and on behalf of all others similarly situated who consent to their inclusion in this collective action, sue Defendants for violations of the Fair Labor Standards Act for failing to pay Plaintiffs and others similarly situated the lawfully required overtime compensation (aka premiums).

## FLSA COLLECTIVE MEMBER DEFINITION AND RELIEF SOUGHT

14.     This collective action is to recover from Defendants overtime compensation, liquidated damages, prejudgment interest, and the costs and reasonable attorney's fees under 29 U.S.C. §216(b) on behalf of the Plaintiffs and all similarly situated persons composed of:

> **All persons employed as tow truck drivers or wrecker drivers (hereinafter "drivers") by STEPP'S TOWING SERVICES INC. at any time within the preceding 3 years of the filing of this complaint to the date of trial.**

## JURISDICTION AND VENUE

15. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, since this action involves a federal question under the Fair Labor Standards Act, 29 U.S.C., §§201-219, inclusive.

16. This Court has personal jurisdiction over this action because the Defendants are engaged in business within the State of Florida.

17. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b) within this district is where Defendants maintains a corporate office from where Plaintiffs worked was directed from. In addition, the common unlawful pay practice complained of was created, carried out, and enforced from the corporate office within this District.

18. Upon information and belief, Defendant Stepp's Towing Services Inc. (STEPP'S) individually had revenues of $500,000.00 or more in the previous three (3) years and employed twenty (20) or more employees during the same period. Defendants are also engaged in interstate commerce, at times towing vehicles or equipment across state lines.

19. Defendant STEPP'S TOWING SERVICE INC. is an employer as defined by Section 203 of the FLSA and subject to the overtime requirements of the FLSA.

**THE PARTIES**

20.    At all times relevant to this action, Representative Plaintiff Claude Bucknall resided in Wesley Chappel, Pasco County, Florida, and performed work for Defendants as a wrecker driver ultimately reporting to the corporate office.

21.    Plaintiff Bucknall worked for Defendants from approximately October 2025 until May 2026.

22.    At all times relevant to this action, Representative Plaintiff Shaun Cooper resided in Brandon, Hillsborough County, Florida, and worked for Defendants as a wrecker driver ultimately reporting to the corporate office in Tampa, Florida.

23.    Plaintiff Cooper worked for Defendants from approximately November 2025 until May 2026.

24.    Plaintiffs were all 100% commission pay employees and classified by Defendants as exempt employees under the FLSA.

25.    Plaintiffs were required to work a schedule of greater than 40 hours each workweek and expected and required to work overtime throughout their terms of employment, including but not limited to on-call work in which they were strictly paid on a commission basis as well.

26.    Plaintiffs were paid on a commission basis pursuant to some unwritten and unknown formula associated with the costs of the towing, upwards of 25% to 30% of the charge to the customer for the towing services.

27.    Plaintiffs' primary job duty was to work as a wrecker driver or tow truck driver ("driver") meaning, drive to a crash scene or a place of disablement, hook up the vehicle to the tow truck or lift it onto a flatbed truck, and drive it to a storage yard or other designated location by the customer. Sometimes drivers were assigned to tow heavy equipment such as generators.

28.    Defendant, Stepp's Towing Service Inc. (STEPP'S) is a Florida for profit corporation with a principal place of business located at 9602 E. U.S. HWY. 92, TAMPA, FL 33610. Defendant may be served through its registered agent, CEO and owner, Todd Emory Stepp as the same corporate office.

29.    Defendants employed an estimated 15 to 20 drivers at any given time working in Florida, and who reported to multiple work sites ("yards") located in areas such as Brandon, Gibsonton, St. Petersburg, Orlando, Lakeland.

30.    All the drivers' work was ultimately directed from the corporate office and by Todd Emory Stepp, the CEO, President, an owner and a director.

31.    At all times material, Stepp maintained operational control and was responsible for the day-to-day business decisions and operations of STEPP'S, and

the person who created and enforced the unlawful pay practices complained of herein.

32.    Stepp also directed the work of Plaintiffs and all others similarly situated.

33.    Stepp is also thus an employer as defined under the FLSA section 203 and subject to FLSA.

34.    Defendants STEPP'S and Stepp are jointly and severally liable for the unlawful pay practices which violate the FLSA complained of herein.

## **GENERAL FACTUAL ALLEGATIONS**

35.    Plaintiffs, like all other employees working as a "tow truck driver" or "wrecker driver," were paid on a 100% commission only compensation basis for the jobs or services performed paid on a weekly basis and all classified as exempt from overtime pay.

36.    Alternatively, Defendants just willfully refused to pay overtime premiums.

37.    Throughout the preceding 3 years of the filing of this complaint until sometime in 2026, Defendants never tracked and recorded the work hours of drivers.

38.    Plaintiffs worked mandatory schedules of 5 days and were assigned to be on-call on a certain number of evenings, and on certain weekends, which routinely

and usually resulted in being called upon to do work by Defendants each on-call shift.

39. When Plaintiffs were assigned to be on call, whether in the evening or on a weekend, they were required to answer and respond to a dispatch call within 15 minutes and present to the location within a set amount of time.

40. Thus, Plaintiffs had to be with the tow truck when on call, and were limited in where they could go, what they could do during this on-call time, stay tied to the truck, and always engaged and ready to work.

41. Since Plaintiffs were drivers, when on call they could not drink alcohol as the same would put them in an impaired and unlawful state of driving under the influence as per Florida law.

42. Moreover, Plaintiffs could not leave their assigned geographic areas when on call.

43. The GFS on-call company policy limited the employee's ability to engage in personal activities while on-call or standby, and thus, the entirety of the on-call or stand-by time was primarily for the benefit of GFS and compensable time for which these overtime hours should be counted and paid.

44. Plaintiffs' job duties primarily involved being informed by one or more dispatchers of a location which requires a vehicle to be towed or transported on the wrecker or tow truck.

45.     Each day, Plaintiffs had to be in the truck at mandated and scheduled times and perform preliminary and postliminary activities.

46.     Plaintiffs routinely worked more than 40 hours throughout the term of his employment with GFS and were paid a premium of some amount for their work hours.

47.     Upon review of Plaintiffs' paycheck statements, and other drivers for GFS employed within the same time reveals that GFS willfully failed to include the earned commission in the regular rate of pay, resulting in an underpayment of overtime wages.

48.     The FLSA requires the regular rate of pay include the commissions in the calculation and then, as drivers are hourly paid employees, they are to be paid time and ½ the regular rate of pay, and not time and ½ the base hourly rate of pay as appears to be the case by GFS applicable to all drivers in the collective.

49.     Further review of paycheck statements shows a payment for "other" compensation which also appears to be excluded from the regular rate of pay and overtime rate calculations.

50.     The work schedules assigned to Plaintiffs were far greater than 40 hours each week, and with the on-call periods, even upwards of 70 or more hours per workweek they were expected to work.

51. Plaintiffs did not have the discretion while on call or stand-by to decline a call, as the same would result in disciplinary action or even termination of employment; the same if they failed to timely respond to a dispatched tow call.

52. However, the overtime wages paid to Plaintiffs and to similarly situated drivers were not compliant with the FLSA's required payment of 1.5 times the regular rate of pay and resulted in underpayments of overtime wages to Plaintiffs and all other similarly situated drivers.

53. The formula used by Defendant to pay drivers for overtime pay, is strictly within Defendant's knowledge and not ascertainable by Plaintiffs simply from reading the paystubs of their or other drivers. However, when adding in earned commissions into the regular rate of pay, an underpayment in the wages owed appears to exist and that Defendant did not fully include any factor in the earned commissions for the work weeks in the regular rate of pay.

54. Defendant used a bi-weekly pay cycle and the commissions earned were paid within that same pay period payroll check.

55. Plaintiffs also did not receive any overtime supplement or shore up when commissions were paid for any preceding work weeks in which they worked overtime hours.

56. Commissions were paid by Defendant to drivers, including to Plaintiffs, on a bi-weekly basis along with the base hourly wages.

57.     Dispatchers would assign Plaintiffs new jobs to perform throughout each day.

58.     For purposes of the collective action, Plaintiffs Bucknall and Cooper, by this Complaint, do herein consent to be a party to this action pursuant to 29 U.S.C. §216(b).

59.     Defendant maintained a policy and practice during the preceding three (3) years of the filing of this Complaint of willfully underpaying its non-exempt drivers, of failing to pay for all on-call and stand-by overtime hours, and of editing or shaving off hours to account for DOT regulations or limitations on hours driven without breaks.

60.     Human Resources or payroll department employees disclosed to one or more drivers that when hours exceeded a number that had some impact under limits for drivers under DOT regulations, they edited and shaved off hours without disclosure to the drivers.

61.     Defendant willfully violated, and continue to violate, §207 of the FLSA by failing to pay Plaintiff and others similarly situated the correct and lawful required overtime compensation and premiums at the mandatory time and one half of their regular rates of pay for all hours over 40 in each and every workweek.

62.     Upon information and belief, for the three (3) year period before this filing, (the "Class Period"), the continued violations of FLSA §207 that are

complained of herein have been practiced and imposed upon all of Defendants' drivers paid by Defendants.

63.     The FLSA provides that, with certain exceptions, employers must pay employees overtime of at least one and one-half (1.5) times their regular rate of pay for any hours over forty (40) worked in a week. 29 U.S.C. §207(a)(1).

64.     The editing or shaving off time from drivers' time records thus results in a gross underpayment of overtime wages earned and owed, and amounts to a theft of their wages as well as an act of unjust enrichment.

65.     Upon information and belief, Defendant willfully shaved and edited off hours from drivers' time records over the preceding 3 years without disclosing to them when it was done, and in direct violation of the FLSA.

66.     The FLSA mandates that earned commissions must be included in the regular rate of pay calculation and that overtime pay for hourly, commissioned employees must include the commissions earned in the time and one-half calculations for premiums to be paid for overtime hours worked.

67.     Accordingly, Plaintiffs and the putative class of similarly situated seek and are entitled to recover all overtime pay due from overtime hours worked for which compensation was not paid at the correct and lawful rates or not paid at all, plus an equal sum in liquidated damages, prejudgment interest, attorneys' fees and costs under the FLSA's three (3) year statute of limitations.

## COLLECTIVE ACTION ALLEGATIONS

68.     Plaintiffs bring this action individually and on behalf of all other similarly situated Drivers as a collective action pursuant to the Fair Labor Standards Act, 29 USC §216(b).

69.     In *Young v. Cooper Cameron Corp.,* the court stated that: "The requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collective action and thus no showing of numerosity, typicality, commonality and representativeness need be made." *Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 54 (S.D.N.Y. 2005).

70.     Still, despite the *Young* court's ruling, the members of the Collective (aka class) are so numerous that joinder of all members is impracticable and in the interests of justice, as well as in keeping with the legislature's intent in creating Collective Actions under Section 216(b), proceeding as a collective action is proper in this case. While the exact number of the members of the collective is unknown to the Plaintiffs at this time and can only be ascertained through appropriate discovery, upon information and belief, Plaintiffs believe that there are 350 or more individuals who were employed by Defendants within the three (3) year relevant claim period.

71.     Plaintiffs will fairly and adequately protect the interests of the members similarly situated drivers and have retained counsel that is experienced and competent in class/collective actions and employment litigation.

72.    A collective action suit, such as the instant one, is superior to other available means for a fair and efficient adjudication of this lawsuit. The damages suffered by individual members of the collective may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the collective to individually seek redress for the wrongs done to them.

73.    A collective action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy. Absent these actions, the members of the collective likely will not obtain redress of their injuries and Defendant will retain the proceeds from its violations of the FLSA.

74.    Furthermore, even if any member of the collective could afford individual litigation against the Defendants, it would be unduly burdensome to the judicial system. The instant methodology, when compared to voluminous individual actions, has fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court. Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual members of the collective and provide for judicial consistency.

75.    Upon information and belief, all Drivers performed the same basic and primary job requirements as the Plaintiffs and had similar job duties and responsibilities: go to assigned sites and tow, pick up, and transport disabled trucks

and vehicles (sometimes heavy equipment) and deliver them to assigned locations or customer designated locations.

76.     All drivers were paid on a strictly 100% commission only basis and not paid any minimum wages nor or overtime wages or premium pay for hours worked over 40 in any workweek.

77.     Most drivers were assigned and required to work on call shifts during an evening and on a weekend, including the Plaintiffs here.

78.     There is a well-defined community of interest in the questions of law and fact affecting the Collective as a whole. The questions of law and fact common to each of the collective members predominate over any questions affecting solely individual members of the action. Among common questions of law and fact are:

     a.     Whether Defendants employed members of the collective within the meaning of the applicable provisions of the FLSA;

     b.     Whether Defendants unlawfully misclassified all drivers as exempt from overtime pay in violation of the FLSA and thus violated the overtime pay requirements of section 207a of the FLSA.

     c.     The correct calculation of the regular rate of pay and overtime pay rates for drivers;

d.    The hours considered compensable time for on-call shifts assigned and worked by drivers;

e.    Whether Defendant willfully misclassified drivers as exempt such that a 3-year SOL should apply;

f.    Whether Plaintiffs and the Collective have sustained damages, and if so, what is the proper measure of such damages; and

g.    Whether Defendants willfully and with reckless disregard, violated the FLSA.

h.    Whether Defendants can prove theft have a subjective and objective good faith basis under the FLSA for misclassifying Plaintiffs and drivers as exempt and should be ordered to pay an equal sum in awarded overtime pay as liquidated damages;

79.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its continued maintenance as a collective action.

## COUNT I:
## VIOLATION OF § 207 OF THE FLSA

80.    The foregoing paragraphs are realleged and incorporated as if fully set forth herein.

81.     At all relevant times, Defendants employed Plaintiffs and the defined collective, as their Employers within the meaning and definitions or Employer in the FLSA.

82.     Upon information and belief, all Drivers were paid under a common and identical compensation plan and scheme, consisting of strictly 100% commission only pay and were all misclassified and treated by Defendants as exempt employees under the FLSA.

83.      Defendants willfully refused to pay overtime premiums to Plaintiffs and all other similarly situated drivers during the period of 3 years preceding the filing of this complaint to the present.

84.     Throughout the same 3-year period, but for a recent change in 2026, Defendants never tracked and recorded the work hours of Plaintiffs as required by 29 CFR part 516 and the FLSA's time keeping requirements for non-exempt employees.

85.     Defendants have failed to make, keep, and preserve accurate time records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA 29 USC 201 et. Seq., including 29 USC Sec. 211(c) and 215 (a).

86.     Evidence reflecting the precise number of overtime hours worked by Plaintiffs is in the possession of Defendants in some manner or form. If these records

are unavailable, Plaintiffs may establish the hours he worked solely by his testimony and the burden of overcoming such testimony shifts to the employer. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

87.     However, these records are not entirely accurate because Defendant failed to record and track all of the actual hours Plaintiff worked, including the new time keeping Defendants instituted in 2026.

88.     If actual time records are unavailable or unreliable, Plaintiffs may establish the hours they worked solely by their testimony, and the burden of overcoming such testimony shifts to the employer. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

89.     As a result of these unlawful pay practices complained of herein, throughout the three (3) year class period to the present, Defendant effectively stole wages from Drivers and been unjustly enriched.

90.     Defendant knowingly and willfully failed to pay Plaintiffs and all other members of the collective, overtime compensation at the appropriate legal rate for all hours they performed work on behalf of Defendant above and beyond forty (40) hours per workweek in violation of the FLSA, in particular 29 U.S.C. § 207.

91.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. §255(a).

92.     Defendant cannot and does not have a good faith basis under the FLSA for its willful and unlawful pay practices and actions complained of by Plaintiffs.

93.     Plaintiffs and the collective of similarly situated drivers thus are entitled to and should be awarded liquidated damages of an equal sum of the overtime wages awarded or recovered for a period of three (3) years preceding the filing of this action to the present and continuing.

94.     Sometime in March or later of 2026, after Defendants learned of a similar lawsuit under the FLSA against a competitor towing services, Guardian Fleet Services Inc. (GFS) in the case of *Brouillette and Woop v Guardian Fleet Services Inc.*, Case no. 9:26-cv-80125-AMC, Defendants changed their time keeping practices and procedures and started to command drivers to start clocking in and out their work times.

95.     However, after arriving at a yard to work, such as at the mandatory time of 6 am for a scheduled shift of 6 am until 6pm, Defendants instructed drivers to clock out immediately as if on a break and falsify the time records.  Any time drivers were sitting idle, waiting for an assigned tow job, they were instructed to be off the clock.

96.     Defendants told drivers that they were to be clocked out from the arrival time until the first call and instructed to remain and sit and wait at the yards until called.

97.    Regardless of this change in time keeping, upon information and belief, drivers continued to work more than 40 hours per week without overtime premiums being paid.

98.    Defendants have thus willfully engaged in the practice of falsifying time records, which makes their time records inaccurate and unreliable.

99.    Defendants' institution of a time keeping procedure and system after learning of the Guardian Fleet Services Inc. FLSA collective action lawsuit by tow truck drivers, is an admission of its unlawful pay practices and willful violations of the FLSA.

100.    Due to Defendants' willful FLSA violations, Plaintiffs allege individually and on behalf of the members of the Collective that they have suffered damages and are entitled to recover from Defendants the unpaid overtime compensation due and owing for all hours worked in excess of forty (40) in each and every workweek, plus an additional equal amount as liquidated damages, an award of prejudgment interest, payment of their incurred reasonable attorneys' fees, costs pursuant to 29 U.S.C. §216(b).

**WHEREFORE** Plaintiffs, Plaintiffs BUCKNALL and COOPER pray for and demand judgment against Defendant as follows:

a.    An order designating this action as a collective action and issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated

individuals across the nation with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Join this action as Plaintiffs pursuant to §216(b); and that notice be sent to all past and present employees of all named Defendant any time during the three (3) year period immediately preceding the filing of this suit, through and including the date of this Court's issuance of the Court Supervised Notice;

b. An ORDER and ruling by this Court that Defendants have willfully failed to comply with the record keeping requirements of the FLSA and 29 CFR part 516;

c. An ORDER and ruling by the Court that Defendants' have violated the overtime pay requirements of section 207 of the FLSA, and willfully failed and refused to pay overtime premiums to Plaintiffs or at minimum acted with reckless disregard for their requirements to pay overtime premiums its drivers;

d. That the Court award Plaintiffs and similarly situated persons who consent to join this action overtime compensation for all the previous hours worked over forty (40) hours in any work week during the past three years through to the date of trial, plus an equal sum in liquidated damages pursuant to § 216 of the FLSA;

e.  An order awarding Bucknall, Cooper, and all collective members who consent to join, their incurred attorneys' fees and costs pursuant to §216 of the FLSA;

f.  That the Court find that STEPP'S and Stepp have willfully violated the overtime compensation requirements of section 207a of the FLSA and award wages back 3 years preceding the filing of this Complaint;

g.  An Order finding that Defendants have violated the record keeping requirements of FLSA, and as codified at 29 USC Part 516; and

h.  That the Court approve and supervise issuance of notice of this action to be sent to all similarly situated collective members and certify this action to proceed collectively under section 216(b) of the FLSA; and

i.  Pursuant to Section FLSA section 217 (codified as 29 U.S.C. § 217); the Court issue an injunction and enjoin Defendants from continuing with their unlawful pay practice of misclassifying drivers as exempt and order and direct Defendants to reclassifying drivers to non-exempt under the FLSA;

j.  That the Court awards any other legal and equitable relief as this Court may deem appropriate, fair, and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint and on all other issues so triable.

Filed on this 11th day of June 2026.

Respectfully submitted,
*/s/ Mitchell L. Feldman, Esq.*
**Mitchell L. Feldman, Esq.**
Florida Bar No.: 0080349
FELDMAN LEGAL GROUP
12610 Race Track Road #225
Tampa, Florida 33626
Tel: 813-639-9366
Fax: 813-639-9376
Mfeldman@flandgatrialattorneys.com
mail@feldmanlegal.us
*Lead Attorney for Plaintiffs and all others similarly situated*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Parties may also obtain a copy directly from the CM/ECF system.

*/s/ Mitchell L. Feldman, Esq.*
**Mitchell L. Feldman, Esq.**
Florida Bar No.: 0080349